Case number 20-1245. Mandy Motley-Lee, Abalance v. Commissioner of Internal Revenue. Ms. Li, for the Abalance. Mr. John Choi, for the Appellee. Mr. Manos. Amicus Curio. Ms. Li, please proceed. Thank you, Judge Henderson. May it please the Court. This is a case of an abuse of discretion. I humbly request that this Court review the Tax Court's decision to grant opposing motion for summary judgment. Both opposing counsel and Amicus have raised jurisdictional concerns. However, jurisdiction is not a barrier preventing this Court from hearing the merits of this case. Therefore, when this Court has been satisfied that no jurisdictional issue exists, I request that we proceed to the merits of this case. This Court has exclusive jurisdiction to hear Tax Court decisions under 26 U.S.C. section 7482-A-1. This jurisdiction allows this Court to review cases that are grants of summary judgment, which is what we have here. The record will show that the Commissioner did not meet his burden of showing that there was no issue of material fact. The W.O. rejection grounds lacked sound basis in fact, and the W.O. rejection decision was not supported by the administrative record. Therefore, this Court should reverse the grant of summary judgment and remand the case for further proceedings in the Tax Court. But can you tell me how, if you got the relief you want, how would that give you any kind of remedy? It would give me the opportunity to be heard, Your Honor. The opportunity to be heard, but you have been heard. You've been heard by the office, you've been heard by the Tax Court, you're being heard by this Court. Your Honor, although I have had audiences with both Courts and the W.O., my position is that the W.O. did not consider the information which was submitted, and the Tax Relief and Health Care Act of 2006 requires that they analyze my claim and either investigate or assign it, and they did neither. Well, but I mean, they definitely looked at it. We have a record here of things that they have looked at, and I want to be careful about what we talk about. We have a record of things you want them to, it's not that you want to be heard, it's that you want them to do still more examination. Is that right? Your Honor, I want to exercise my legal right of review under the APA. So, but you had reviews, and what you want to say is you wanted more review, right? Yes. You don't deny that they reviewed what you submitted to them, you just wanted them to look further, look at more stuff. I want them to consider everything that was presented to them, and the record will show that they did not. And once that happens, where does the statute give you a remedial right when they have actually, they have analyzed the information you gave them to, for a court to dictate some of the contours of the examination? Because normally, that sort of enforcement stuff is discretionary with the executive branch. Yes, Judge Millett, discretionary decisions are unreviewable. However, and that is something that I believe opposing counsel did raise, that is not the situation in this case. For example, the commissioner could have issued a $1 reward, and I would not have a legal remedy to ask the tax court to review that award, but that is not the case here. Are you claiming that your injury is that you didn't get an award? No, Your Honor. My injury is that the foreclosed my possibility of receiving an award because they did not consider everything that was presented to them. But even if they considered it, that wouldn't give you an award? That would be their determination, Your Honor. So they would have to consider it, and then they would have to choose to exercise their prosecutorial discretion to go after a taxpayer, which courts can't order. Correct. And then they would have to prevail. Courts can't order that, right? They'd have to actually win the case, and then they would make a discretionary judgment whether to give you something. That's the chain of events that would lead to you receiving an award. You are correct, Judge Millett, and that is what I'm requesting is that due process be approved. Your Honor, the tax court does have jurisdiction to review W.O. rejections. Opposing counsel raised that they did not. However, the leading authority, Aprezze versus the commissioner, shows that this court approved or affirmed that case just last year, and this court's that inherent in every subsection A rejection is a corresponding subsection B-1 determination, and this corresponding determination assures that the tax court retains jurisdiction over subsection A rejections. In addition, subsection B was added by the Tax Act of 2006. However, the whistleblower office was created in 1867, and the tax court has always had review of those rejections. There are two cases out of the court of federal claims that support this position, DaCosta versus the United States and Lloyd versus the United States. Therefore, the tax court did properly review the W.O.'s decision, but they erred when they granted the motion for summary judgment. Therefore, I am requesting that this court reverse the motion for summary judgment and remand the case to for further proceedings in the tax court. All right. Are there any further questions? Oh, I will hear from Mr. John Choi. Good morning. May it please the court, my name is Matthew John Choi, and I represent the appellee, the commissioner of the Internal Revenue Service. I'll just start briefly by addressing some of the points raised. I think the record reflects that all of the materials submitted were reviewed, but the WBO, in its discretion over the evaluation and investigation, decided not to go beyond those materials and has no obligation to do so. There was no action initiated, which also means there was no attempt to collect proceeds, which means there can be no award, and there's then no award to be reviewed. Now, sort of getting to the jurisdictional issue, after initial briefing, this court appointed amicus, and amicus submitted a brief indicating that the tax court lacked jurisdiction. Having reviewed amicus' briefing and also reevaluating the language of the statute, the government changed its view and now argues the tax court did not have jurisdiction to review the whistleblower office's decision regarding appellant's claim. And just to briefly summarize, the amicus opined the tax court lacked jurisdiction over pre-action or threshold rejections, because such initial rejections were not award determinations. And for them to be an award determination, there would at least need to have been an action taken against the target taxpayer and proceeds collected. Only then would you have an award determination under B1 through 3 that could be reviewed under B4, and B4 is the section of the statute that includes the grant of jurisdiction. The government, while agreeing with amicus, has put forward as its primary argument that this court should find that the requirements in B5 are jurisdictional. This argument complements amicus' argument, but it's not based on it. And so we think the two stand side by side and on their own. So B5 sets forth some threshold requirements that must be met for all of subsection B to apply, which means that the jurisdictional grant in B4 is limited by B5 and wouldn't apply in cases where the threshold requirements are not met. Similarly, there's no... How does that make... How do we know that... I'm sorry, finish your sentence. I was just going to say that similarly, there's no non-discretionary awards where the B5 requirements aren't met. All of subsection B is knocked out. That doesn't make B5 jurisdictional, right? It could just be a claims processing rule. Well, Your Honor, we think it is jurisdictional. Because? That is, B5 clearly applies to B4, and B4 has no application where the threshold requirements in B5 are not met. I know, but there are... You know, this isn't the only statute in the U.S. Code that has a lot of sections, including one on jurisdiction, and then another later on that's in that same list of subsections says, here's something that applies to this entire provision. And so, if we adopt your theory, we are adopting a rule, not just for this statute, but for a lot of other statutes, including some where that very question, that very jurisdictional question has been rejected, the very jurisdictional interpretation that if there's another subsection, one, two, three, four down from the jurisdictional one, and it says this applies to the entire provision, that that will be treated as jurisdictional. That's been rejected under other statutes. That same reading has been rejected under other statutes. And so, that would be the difficulty with just assuming that when you've got a one subsection provision that says this applies to the whole subsection, and another provision of that subsection is jurisdictional, that the one that applies to all is jurisdictional, as opposed to a claims process. Well, Your Honor, I'm not familiar with those other specific cases, but I think it would be best to proceed on a case-by-case basis and statute-by-statute. And I think that this statute specifically links B-5 back to B-4 and to all of B. How does it do that in a way? How does it do that? If we go statute-by-statute, we have to have a reason. And your argument, as I understood it, was that, well, it applies to the whole subsection, right? And that argument will get us in trouble under other statutes. Your Honor, there's a reason it applies to the whole subsection, though. Had they simply said that B-4 would not apply, or the statutory grant that B-4 would not apply, that would have left in place the awards. So, here, by saying the subsection will not apply, right, where there's no action, you're not only knocking out the ability to review and the grant of jurisdiction, you're also getting rid of the awards that would have been reviewed. So, this is sort of negating the whole thing. And it clearly does apply back to B-4. In any event, B-4 is a jurisdictional view of what's going on here, and that B-4 is good enough to knock this out of court. Does the government now accept that position? Yes. Yes, we do. We think the amicus is certainly correct that an award determination under B-1 through B-3 is required for there to be jurisdiction, and that that would not occur. And there is no jurisdiction for the tax court to review the threshold determination. Right. Right. There would need to be an action and a collection of proceeds under the amicus's theory. In addition to an action, there also needs to be an amount in dispute in excess of two million dollars. These threshold requirements... I just want to be crystal clear, because the United States, you know, changed its position in response to the amicus, but then chose to offer a whole different theory. But the United States also agrees with the amicus reading of how much money you were given or not given under the preceding three sections. You don't disagree with that? No. No. And if I could just explain why we've also argued B-5 is the only difference between awards under A and B are whether the threshold requirements are met. So these requirements are the distinguishing factor. I see my time has expired. I'm sorry, did you say? Judge Millett, do you have more questions? I made... my sound might have clicked out for a second, so I thought... I saw you talking, but didn't hear anything for your last couple sentences. Mr. Johnshoy. Let me try to repeat. So the reason we've raised the complementary argument is because we believe that the difference between awards purely discretionary awards that can still be made under A and the sort of non-discretionary awards under B is these threshold requirements. And the tax court's failure to inquire about the threshold requirements is what's caused them to, in a sense, review all award determinations as though there be award determinations when, in fact, they're not. Thank you. All right. If there are no more questions, then Mr. Manas. Hello. Good morning. Robby Manas. The tax court lacked jurisdiction under 7623B4, and that's all this court needs to reach here. Under B4, what can be reviewed is a determination that was made under paragraphs one through three or should have been made under one through three, and that's not at issue here. The decision was labeled as under A, and there is no argument that the rules of B1 through three apply. The argument is instead that the whistleblower office, as Judge Millett mentioned, didn't exercise its evaluative function well enough and should look at more information or should do a further review of claim. But it's conceded that there was review. There was some look at the claim, and there was a determination made that it was speculative and not credible. And that's not something that the statute speaks to as being reviewed. That can be reviewed by the tax court. That is an enforcement or non-enforcement decision by the agency. Can you help me understand how this statute fits together and in particular what counts as a determination? If you just look at B1, 2, and 3, that gives you one sense of a determination. But B1 says, if the secretary proceeds with any administrative or judicial action described in subsection A, it talks about criminal prosecution. That's what it sounds like. It talks about guilt. Maybe it doesn't mean criminal, but it talks about guilt. Or in A1, it says detecting underpayments of tax. Is that a form of action to which B1 is referring? Yes. Just detecting underpayment of tax is not going forward with the proceeding. Right. But I believe then, I mean, then you have the rest of the statute, both at A and B, that talks about actually collecting proceeds based off that action. So even though it's maybe not contained discreetly within 1, detecting underpayments of tax, the rest of the statute speaks to the procedure requirements, so there has to be something further. Is that detecting underpayment of tax, is that just what they do within their own office? Like if you send this off to some office of the IRS and if they find, like under Ms. Lee's theory, if they had examined further as she wants and internally detected underpayment of tax, that counts as the type of administrative action for purposes of B. Is that right? It's just, I get that you say that we can't pay you unless, we can only pay out of proceeds, so we got to get proceeds too, is your theory. But that counts. I think that's correct. Yes, it's an internal administrative proceeding by the IRS that could involve looking at a whistleblower's complaint or just independently the agency is finding an underpayment of tax and then collects that money administratively against the target taxpayer. And so that's how, so I was trying to figure out how, you know, there's this, the note 406B, which imposes, you know, the job of this office is to analyze information received from any individual. It says individual described in 7623B. And so, sorry, I'm trying to help me piece this whole thing together. So the individual described in 7623B would include an individual under 7623A? Well, you've hit on a confusing and I think inartful drafting of the statute and the because the whole presupposition of the B rules is that there actually is already an action with proceeds. And so how can you know when you're supposed to analyze them in the first place? Right, so it suggests that you don't get that far down the line under B actually. Right, and I don't think that's the right inference to make, although I do think it's inartfully worded, that note. I think it just refers to, if you look at subsections A and B, B is the only one that refers to an actual individual. A, although it's clearly talking about whistleblowers, it doesn't actually speak in terms of an individual person. It's just talking about, you know, the secretary paying such sums as he deems necessary for these actions. And so I think it's just trying to, it's referring to B, because that's what the individual is described. And it's just referring to someone involved in the whistleblower process, not somebody who's necessarily entitled to an award under B, or even necessarily going to merit, you know, application of these rules B through 1 through 3. It's just the individual who's given information and it's sort of referenced in subsection B, so someone who's involved in the whistleblower process. I think that's the best way to make sense of this language in the statutory now. So it creates, yeah, I'm just trying to figure out, because like you explained in your brief, B seems very much about actions that have produced proceeds, but the obligation to analyze information received clearly precedes that process. Do you dismute, do you think it's right that, is there any reason Ms. Lee wouldn't be covered by 406B that she had, or the office had an obligation to analyze the information that was provided? Not at all. I think that statutory no clearly applies to Ms. Lee and any whistleblower who submits information. And so there is a command to investigate and analyze information, but here that duty was discharged. There was concededly some investigation and analysis, that's what led to the rejection. It'd be a different case if there was none at all, then maybe there was some form of review somewhere that could take place under the statutory note, and then some sort of other jurisdictional provision, but it wouldn't be B4, because B4 doesn't talk about that sort of action. But then sort of the tax court theory has been, once we can see that people who just submit information like Ms. Lee are individuals covered by B, and those are the individuals referenced in B, 406B kind of drives us there, then at any point when you cut off further consideration, the IRS cuts off further consideration, it's kind of determining no recovery, right? Right, but it's more of a, it's a, we're sort of in this weird world where it's not a consideration of an award when there's already been an action taking place and proceeds collected. I said the administrative actions count as actions, it's purely internal administrative actions, reviewing papers count as actions because that's what 7623A wants. So to be clear on that point, I do think that's right, but my understanding is that the IRS has regulations defining what an action is, and it's not just any, there has to be actually a formal sort of administrative detection of underpayments against the target taxpayer. It's not merely enough just to look at the whistleblower's claim. Okay, so that would look like a letter to the taxpayer, an audit to the taxpayer. I believe so, I'm not exactly sure what form it would take, but there would be some sort of formal sort of action against the target taxpayer himself or herself. So we don't need to decide whether in a case like that, if they just said we've detected it but we're not doing anything more, whether that would be reviewed as a determination under B that would qualify under B4. We don't need to decide that because that didn't happen in this case. Certainly, this court can just rest on the fact that there's no action whatsoever and leave for another day any further questions about whether there also needs to be proceeds or anything else or this B5 question of these threshold monetary amounts. There is no action here and that's enough to end the jurisdictional inquiry. All right, any more questions? Okay, how much time does Ms. Lee have left, Madam Clerk? Ms. Lee has three minutes left. All right. Thank you, Your Honors. I disagree with Mr. Manas' suggestion that there was no action taken here. In fact, the WO issued a letter which was a foreclosure of an award and by saying that a claim is rejected under subsection A, then that is also saying that the whistleblower is not entitled to a mandatory award which is what subsection B provides. I request that we proceed to the merits. If the panel is satisfied that there is no jurisdictional issue. Well, that doesn't necessarily mean you have two minutes left. You can say what you want. Thank you, Judge Peterson. Regarding the decision of the WO, without going into specifics, not everything that was submitted was considered. Reviewing the record will show that the grounds for their decision were not based in sound fact and the administrative record does not support the decision to reject the claim. Therefore, the WO's rejection was an abuse of discretion and it should be reviewed and the case remanded to the tax court for further proceedings. All right. If there are no further questions, Mr. Manas, you were appointed by the court and we want to thank you for your very able assistance. So, Madam Clerk, if you'll adjourn court.
judges: Henderson, Millett, Sentelle